# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTH DISTRICT OF TEXAS
### FORTH WORTH DIVISION

| | | |
|---|---|---|
| **MANUEL MATA;** | § | |
| | § | |
| **Plaintiff;** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MATTHEW KRUEGER,** | § | **No. 4:26-cv-120** |
| **in his individual capacity;** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Manuel Mata, for his Amended Complaint and Jury Demand, states and alleges as follows:

## THE PARTIES

1. Plaintiff Manuel Mata is a citizen of the United States and was a resident of the state of Texas during the relevant times described herein.

2. Defendant Matthew Krueger is a citizen of the United States and was a resident of the state of Texas during the relevant times described herein. Defendant Krueger is sued in his individual capacity as a police officer in the Fort Worth Police Department.

## JURISDICTION AND VENUE

3. This action arises under the Constitution and laws of the United States, and is brought pursuant to Title 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claims for attorney fees and costs are conferred by 42 U.S.C. § 1988.

1

4. Venue is proper in this District according to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this District and Defendant resides in this District.

## ALLEGATIONS

5. In the early morning hours of February 4, 2024, Plaintiff Manuel Mata was walking on the sidewalk through downtown Fort Worth, Texas.

6. As he walked down the sidewalk, Defendant Matthew Krueger began to stalk Plaintiff, likely because Mr. Krueger was familiar with Mr. Mata as a long-time First Amendment auditor and individual who films police.

7. Mr. Krueger had had prior interactions with Mr. Mata and had expressed a dislike for First Amendment auditors.

8. Mr. Krueger knew from these prior interactions that Mr. Mata was not dangerous and did not have a violent record.

9. At some point, Mr. Krueger called out to Mr. Mata to "come here a second." Mr. Krueger did not say that Mr. Mata was under arrest or even that he was a police officer.

10. At this point, Mr. Mata was still on the sidewalk, never having impeded traffic nor having violated any laws.

11. As a second officer said "police stop," Mr. Krueger pulled his gun out and pointed it at Mr. Mata's head.

12. During this time, Mr. Mata slowly turned his head to see these officers and began complying with this surprising order as he had engaged in no wrongdoing.

13. The gun being pointed at his head was a particular surprise as he was unarmed and was not engaged in any conduct threatening to any person.



14. At this point two or three officers were present.

15. With a gun pointed at his head, Mr. Mata understood that he was not free to leave.

16. At the time that Mr. Krueger pulled his gun, Mr. Mata had engaged in no conduct which could possibly lead any reasonable officer to believe that he was a threat to any person, and particularly no reasonable officer could believe that Mr. Mata constituted a deadly threat.

17. Mr. Krueger had no reason to believe and could not articulate any fact to support a belief that Mr. Mata possessed any weapon.

18. All that he had observed was a man walking down the street, interacting with no one, looking in no vehicles, and instead simply minding his own business.

19. While holding Mr. Mata at gunpoint, he ordered Mr. Mata to the ground even though Mr. Krueger had observed nothing which could possibly indicate that Mr. Mata was a violent threat.

20. Immediately after demanding that Mr. Mata "get on the ground" and without even giving Mr. Mata the time to get on the ground, Mr. Krueger told Officer Lee who was present to "take him to the ground."

21. This entire time, Me. Krueger continued to point his gun at the head of an unarmed individual, Mr. Mata, who was at best suspected of jaywalking.

22. Fortunately, Officers Lee and Cardenas, present with Mr. Krueger, did not immediately tackle Mr. Mata as Mr. Krueger ordered them to do.

23. Officer Lee attempted to calm Mr. Krueger down, attempting to de-escalate a situation that Mr. Krueger alone had caused.

24. Within seconds, Mr. Mata turned, stopped, slowly pulled his hands out of his pockets, and put them on his head as directed while turning on a camera worn on his chest.

25. Mr. Mata never moved from this position.

26. He slowly pulled his hands out of his pockets to ensure that the police did not think he was quickly presenting a weapon.

27. Indeed, Mr. Mata's hands were on his head within nine (9) seconds of the first statements by Mr. Krueger while Mr. Mata was walking with his back turned to Krueger and seven (7) seconds of any person saying that they were police.

28. Mr. Mata did not run or resist any police officer.

29. Mr. Mata had engaged in no criminal conduct.

30. Mr. Mata in fact complied with officer demands as soon as they were made.

31. At no point did Mr. Mata make any movement or engage in any conduct which would lead any person to believe that he was a threat to their safety.

32. Mr. Mata, throughout this entire interaction, asked why he was being seized, stating repeated "for what?"

33. Officer Lee told him that he was only being detained, but Defendant Krueger immediately stated, no he's under arrest.

34. At the same time, Officer Cardenas stated that the only reason they that Mr. Mata was being arrested was for jaywalking.

35. Even though Mr. Krueger immediately stated that Mr. Mata was under arrest, in his written statement, Mr. Krueger wrote in his report that the purpose of the stop was to investigate a suspicion.

36. Nonetheless, Mr. Mata had not engaged in even jaywalking – instead, he had crossed the street at the crosswalk.

37. The only thing Mr. Krueger observed was Mr. Mata walking down the sidewalk.

38. Instead, Mr. Krueger was motivated by animus for Mr. Mata based on his prior protected First Amendment conduct in filming police officers in Fort Worth.

39. Mr. Krueger knew Mr. Mata from Mr. Mata's prior conduct in filming police.

40. After Mr. Mata was placed into handcuffs, he was placed in the back of Mr. Krueger's patrol vehicle and later transported by Mr. Krueger to the local jail where he remained for five (5) days.

41. However, Mr. Mata suffered from the extreme fear of having a gun pointed at him when he had simply been walking down the sidewalk having done nothing wrong.

42. After arresting Mr. Mata, Mr. Krueger prepared a narrative statement wherein he made multiple false assertions in order to support charges being brought against Mr. Mata.

5

43. First, Mr. Krueger wrote that he "observed several behaviors of [Mata] that led us to believe he may have been about to commit a crime." Mr. Krueger fails to elaborate because such assertion was not based in fact, not recorded on any body-worn camera, and not collected from any local security camera of which there were many. Instead, it could only be based on Mr. Mata's ethnicity.

44. Mr. Mata engaged in no behavior which any reasonable officer could interpret as the conduct of someone about to commit a crime, but instead was simply Mr. Mata walking down the sidewalk.

45. Nothing about Mr. Mata's conduct or behavior could lead any person to believe he was about to commit a crime. He was simply in a busy area, walking down the street. More importantly, Mr. Krueger never witnessed Mr. Mata commit or attempt to commit a crime and did not state that he had a reasonable suspicion that Mr. Mata had already committed a crime.

46. Mr. Krueger then stated that Mr. Mata "exhibited characteristics that I know through my training and experience to be consistent with the possession of a concealed weapon." In support, Mr. Krueger only offered that Mr. Mata was wearing baggy clothing.

47. Again, Mr. Mata was not armed and his choice of baggy clothing could not support a reasonable suspicion that he committing any crime.

48. Again, none of this was captured on Mr. Krueger's body-worn camera nor collected from any of the many local security cameras. This is because Mr. Krueger was lying in this statement in order to justify his gunpoint at an unarmed man who was allegedly jaywalking.

49. Indeed, Mr. Krueger's narrative statement even provides that the reason for stopping Mr. Mata, at gun point, was not even probable cause of any criminal act, but to "investigate the suspicious behavior."

50. Yet within seconds of holding Mr. Mata at gun point and without conduction <u>any</u> investigation, Mr. Krueger stated that Mr. Mata was under arrest.

51. Mr. Krueger then states that Mr. Mata took "a bladed stance." This is not supported by any video. Instead, Mr. Mata simply stood still with his feet close together.

52. The term "bladed stance" is a term abused by police to suggest that an individual standing was taking a fighting stance. Mr. Mata did not such thing, but Mr. Krueger nonetheless wrote that he did.

53. Given that at this point, Mr. Krueger was holding Mr. Mata at gun point, ordering him to get on the ground, and soon had him placed in handcuffs, this seizure constituted an arrest, but the only basis for such seizure was "to investigate." At this point, Mr. Krueger lacked any probable cause to place Mr. Mata under arrest.

54. Mr. Krueger then wrote that Mr. Mata "had intentionally fled from a person he knew was a peace officer attempting lawfully to arrest him." As with all other statements, Mr. Mata had not "fled" from Mr. Krueger. This was yet another intentional lie made to support the charges Mr. Krueger sought to bring because Mr. Mata did not move.

55. This was where Mr. Mata was standing when the officers shouted "police, stop."

7



56. And this is where Mr. Mata stopped and stood still while the three Fort Worth police officers placed him into handcuffs:



57. The vehicle makes clear that Mr. Mata did not "flee."

58. Nonetheless, and in support of his deceitful probable cause affidavit, Mr. Krueger stated that Mr. Mata had fled.

59. Mr. Krueger then spends a paragraph talking about how Mr. Mata attempts "to bait officers into confrontations and filming the interactions" and that "[h]is primary source of income stems from running a Youtube channel." Mr. Krueger placed this in his statement because of his deep animus towards members of the public who record police officers.

60. As a preliminary matter, Mr. Mata did no initiate this interaction. Mr. Mata was peacefully walking down the sidewalk, not even engaged in filming. It was Mr. Krueger who initiated this interaction.

61. The only reason Mr. Krueger could have included this statement in this report was not to support any probable cause, but instead simply to retaliate against Mr. Mata for Mr. Mata's past conduct in filming police.

62. Perhaps this is owing to Mr. Krueger's history of police brutality for which he was previously terminated as a police officer in the Irving Police Department.

63. As Mr. Krueger wrote, he "directed the other officers on the scene to place [Mata] under arrest."

64. Officers did not arrest any other person that wasn't engaged in First Amendment auditing that night simply for walking down the sidewalk.

65. Mr. Krueger then searched Mr. Mata and took his video camera.

66. Upon information and belief, Mr. Mata's phone and camera were subsequently searched based on this arrest.

67.  Mr. Krueger directed that charges of Fleeing Arrest under Texas Penal Code 38.04.

68. As Mr. Krueger knew, the evidence did not support this charge.

9

69. The District Attorney dismissed the charges because the evidence did not support that there was probable cause that Mr. Mata committed the offense.

70. Nonetheless, Mr. Mata suffered from extreme fear and distress in those moments while having a gun pointed at his head and continues to experience emotional distress as a result of Mr. Krueger threatening his life. Mr. Mata fears the police and experiences symptoms akin to PTSD when around police officers.

71. Mr. Mata quickly filed a complaint of excessive force relating to this incident.

72. After learning of Mr. Mata's complaint, Mr. Krueger then spent approximately one month preparing a second charging document against Mr. Mata and several other First Amendment auditors.

73. Mr. Krueger, seeking to retaliate against Mr. Mata and two other First Amendment auditors, and presumably intending to send a message about people who are not sufficiently respectful to police officers and dare to film police officers, sought to have all three individuals, including Mr. Mata, charged with a second-degree felony for "Engaging in Organized Crime."

74. Mr. Krueger must have spent tens of hours trying to find a way to bring felony charges against Mr. Mata as he conducted extensive caselaw research. The report Mr. Krueger put together by himself spans twenty (20) pages and was not completed for more than three (3) weeks following his interaction with Mr. Mata.

75. Mr. Krueger independently went to Mr. Mata's Youtube channel and took issue with the following statements:

   - "That's when I had noticed like some, they were putting some guy in a cop car. So I had went, I crossed the street and went to the other side" … "There's actually like, I made it to the, from the sidewalk to the other one. And then when I was walking towards the, where they had the dudes in the car, I had seen some flashlights

10

flashing. And when I turned around it was I, the flashlight blinded me, but when it came down, the dude had the gun out and he was like, get on the ground. Get on the ground. And I was like, what the fuck? That's why I told him, fuck no man. (Emphasis added) What the fuck you doing? What's going on? Why you got a fucking gun on me? And then that's where he's like, get your hands out."

- "And then the other one on the side said something about a weapon. And that's when I took my phone outta my pocket. And then he said it at the same time, get your hands outta your pocket. So that's when I grabbed my cell phone. And on the other side I had a box of gum. So I put them both out and uh, he told me to put my hands on my head. And when they were all getting paranoid, that's when I did, I put my hands on my head and uh, that's when they were all like, uh,"

- "Get on the ground. And that's when I was like, man, hold up bro. (Emphasis added) What the the fuck are y'all fucking with me for? And then that's when he said jaywalking. And I was like, man, come the fuck on bro. Gimme my ticket. Gimme my ticket and let me the fuck go."

- "Motherfucker pulled a gun on me, told uh, told me to get on the ground and whatnot." … "As soon as I seen flashlights, I turned around and I stopped."

- "And that's when they were telling me some bullshit about get on the ground and the motherfucker had a gun. And I was like, make that one make sense How I evade. I ain't gonna run from none of you motherfuckers. I don't care what kind of co-, clown costume you have on."

76. Based on these statements, Mr. Krueger wrote "[b]y recording and publishing this video, the suspect also committed acts that are a violation of Texas Penal Code Sec 36.06 – Obstruction or Retaliation. The suspect intentionally or knowingly harmed or threatened to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant, witness or prospective witness."

77. Mr. Krueger went on to complain that [t]he suspect's statements are defamatory per-se, as their defamatory nature is apparent on its face—without reference to outside facts or "innuendo." The statements accuse me and other officers of committing a crime (TXPC Sec 37.10 - Tampering With Governmental Record); at 33:25 in the video the suspect states: "they (officers) had to lie about evading." … "See what the fuck evading arrest attention. Oh, they will be on the Brady list. Because, two reasons you'll end up on the

11

Brady list. Untruthfulness and falsifying/lying on uh, records. And that's what all this is the affidavit they had to lie on. Additionally, the suspect's statements are injurious to the officer's office, profession, or occupation. The suspect describes officers as lying on at least 20 occasions throughout the video, describes officers a "shady", "bullies", and "bad cops", and at 12:08 refers to me as "dumb ass" "slow" and "special needs". Rawlins v. McKee (327 SW 2d 633 - Tex: Court of Civil Appeals, 6th Dist. 1959), Hancock v. Variyam (400 SW 3d 59 - Tex: Supreme Court 2013), KTRK Television, Inc. v. Robinson (409 SW 3d 682 – Tex: Court of Appeals 2013), and Moore v. Waldrop (166 SW 3d 380 – Tex: Court of Appeals, 10th Dist. 2005)."

78. It would seem that Officer Krueger does not believe that the public is allowed to be critical of police officers.

79. This attempt at retaliation is serious enough. However, Mr. Krueger was not satisfied with merely bringing more charges based on Mr. Mata's criticisms of him.

80. Mr. Krueger spent more hours watching the YouTube channels of other First Amendment auditors and people who expressed criticism of police.

81. Mr. Krueger transcribed multiple videos over eight (8) pages with statements such as:

- "Mata: This is the pussy that arrested me"
- "Harvey states that I should call for backup. I perceived this statement to be a veiled threat. Mata repeats this comment several times"
- "Mata: Shut up, bitch. Yeah, you pulled, shut up. You just said you don't want to answer questions. Shut the fuck up. Be quiet. Talking about rude. You put a gun on me, bitch. For jaywalking. Talking about respectful and rude. You need to shut the fuck up. 'cause smarter you look when you got your fucking dick licker shut. Don't fucking play with me, man. And I asked you, and I asked you"
- "Mata: Fuck you and your character. 'cause it's garbage"
- "Harvey: Pussy. Oathbreaker. You are an oathbreaker."
- "Mata: Oh, you mean a lie? You mean a lie, right? So how was I evading? I'm not, how did jaywalking turn into evading criminal case with you? Yeah. Fuck

you pussy. You're hero. You're a scumbag. Bam. *Mata makes an obscene hand gesture* Suck my dick, pussy."

- "Mata: Pussy. I'm behind the tree. Fuck you. Fuck you I'm not moving. Fuck you. Fuck you. Fuck you. Fuck you. Alright. What's your name and badge number? Coward. I clown y'all bitches. Shut up. Shut up man. Get y'all dumb ass on. Drunk motherfuckers watch they're scared of a camera"

- "Mata and Harvey loudly proclaim their continued vulgar insults."

- "Ofc Krueger: your insults seem awfully juvenile. 20:51 – Mata: Why should I respect pussies? That did me wrong, dude. You put a gun on me. Fuck you talking about Respect. Shut up bitch. Now you wanna try it again? Yeah, that's what I thought. Y'all tough till y'all. Ain't y'all bad till y'all ain't"

- "Ofc Krueger: Mr. Mata, I would, I would really strongly caution you to stop making defamatory statements about officers with no basis in fact. 23:35 – Mata: You are so stupid. I just told you seven cases that got dismissed. 'cause they lied. They can't stand on the stand because they got uh, truthness on the record. I proved it. What is you talking about? Y'all came get food lit. That's what it was? Yeah. Oh. They, that's your best. Y'all got, Come on man. Trash ass. Like I said, seven cases. Those are not accusations. It's proof, proof, proof case. Why? Why else would a case be dismissed?"

82. Mr. Krueger then explained that these were only a few of the many statements he had watched, writing that "[h]undreds of other instances of the suspects yelling and directing abusive language at officers, and making baseless accusations of criminal conduct, often while interfering with investigations, have been omitted for brevity."

83. As is made clear from the bodyworn camera, Mr. Krueger's statements in support of the February 4, 2024 arrest were in fact lies and was dismissed just as Mr. Mata stated it would be.

84. Mr. Krueger went on to write that "The statements were injurious to officer's office, profession, or occupation, and had the immediate effect of prompting multiple citizens who were passing by to either; comment that they were incredulous that officers would tolerate such abuse, or, to question the officer's integrity and motivation for our prior actions,

13

adopting the implicit assumption that the suspect's disparaging statements were legitimate."

85. Mr. Krueger then took personal affront to one individual discussing his history of excessive force, writing:

> During the final portion of Harvey's video, he states that I have a history of use of excessive force while displaying portions of court documents related to a lawsuit I was party to in 2014. He states that I was indefinitely suspended, allowed to resign, and hired by Fort Worth Police Department despite being on a Brady list for untruthfulness. While it is true that I was indefinitely suspended from the Irving Police department, this suspension was overturned upon civil service appeal and a simple search of the case number on the Dallas County court records website shows the final order from the judge, stating in part: "The indefinite suspension … is hereby rescinded in its entirety. Krueger is entitled to the back pay and benefits he otherwise would have received had he been employed with the Irving Police Department" In fact, I have never had a sustained allegation of excessive force over my 15 years of law enforcement employment and have never been listed on any county's Brady list.

86. This was clearly personal for Mr. Krueger and instead of accepting criticism as is protected by the First Amendment, Mr. Krueger used his position to retaliate against Mr. Mata and others.

87. And in an effort to escalate the consequences of these "defamatory statements," Mr. Krueger wrote:

> The suspects referred to one another as associates and a gang, arrived in the area together in a single vehicle, and coordinated their activities. They stated that they intend to continue to engage in similar conduct moving forward. Each suspect recorded and posted all or portions of the other's confrontations with officers, benefitting from the other's criminal conduct.
>
> Due to the aforementioned facts and information being I have reason to believe and do believe that the suspects committed the offense of ENGAGE IN ORGANIZED CRIMINAL ACTIVITY (OBSTRUCTION OR RETALIATION), Tex. Penal Code PC § 71.02(A)(9), 2nd Degree Felony against the laws of the State of Texas as defined in the Penal Code.

88. Mr. Mata did no learn of these charges until the summer of 2024.

89. Moreover, these efforts were part of a continuing effort to retaliate against Mr. Mata for his protected First Amendment activity in recording police and criticizing them.

90. In the end, no judge would issue the warrant.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourth Amendment Violation — Excessive Force

91. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

92. Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as a law enforcement officer for the Fort Worth Police Department at all times relevant to the allegations in this Complaint.

93. Defendant is a "person" under 42 U.S.C. § 1983.

94. Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

95. Defendant unlawfully seized Plaintiff by means of an unreasonable gunpoint when Plaintiff posed no threat to Defendant and certainly no threat of serious physical injury or death.

96. Defendant's actions, as described herein, were objectively unreasonable in light of the circumstances confronting him.

97. Plaintiff gave Defendant no reason to fear for their safety, Plaintiff was not fleeing, and Plaintiff was complying with officer demands.

98. Defendant did not have a legally valid basis to seize Plaintiff in the manner and with the

15

level of force used under the circumstances presented.

99. Defendant recklessly created the situation in which he used force.

100.    At the time when Defendant used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

101.    Defendant engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

102.    At all times, Defendant was acting under color of state law.

103.    Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their positions knew or should have known.

104.    As a direct and proximate cause and consequence of Defendant's unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

105.    Defendant's herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

106.    Defendant's intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983

**Unlawful Arrest**

107.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

108.     Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as a law enforcement officer for the Fort Worth Police Department at all times relevant to the allegations in this Complaint.

109.     Plaintiff was arrested on February 4, 2024.

110.     When Plaintiff was placed under arrest, he had engaged in no conduct which supported a jaywalking charge, fleeing arrest, nor did any conduct support even a reasonable suspicion to detain Plaintiff.

111.     Nonetheless, and in retaliation for his protected First Amendment conduct, Defendant Krueger placed Plaintiff under arrest.

112.     Defendant lacked any probable cause that Mr. Mata had committed any offense.

113.     At all times, Defendant was acting under color of state law.

114.     Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their positions knew or should have known.

115.     Defendant's actions caused, directly and proximately, Plaintiff to suffer damages.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**First Amendment Retaliation – February 4, 2024 Incident**

116.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

117.     Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as a law enforcement officer for the Fort Worth Police

Department at all times relevant to the allegations in this Complaint.

118.    Plaintiff's speech and expression were related to matters of public concern.

119.    Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of his First Amendment rights.

120.    By unlawfully citing, arresting, and causing the continued prosecution of Plaintiff, Defendant has sought to punish Plaintiff for exercising his First Amendment rights to protest the police and to silence his future speech and restrict his freedom of expression, and the future speech and expression of others. Defendant's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

121.    Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in Defendant's position knew or should have known.

122.    Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

123.    At all times relevant to this Complaint, Defendant was acting under color of state law.

124.    Defendant's actions caused, directly or proximately, Plaintiff to suffer damages.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**First Amendment Retaliation – Organized Crime Filing**

125.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

126.    Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as a law enforcement officer for the Fort Worth Police Department at all times relevant to the allegations in this Complaint.

18

127.     Plaintiff's speech and expression were related to matters of public concern.

128.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of his First Amendment rights.

129.     By attempting to bring felony charges for organized crime against Plaintiff based solely on his protected speech and because of his conduct filming police, Defendant has sought to punish Plaintiff for exercising his First Amendment rights to protest the police and to silence his future speech and restrict his freedom of expression, and the future speech and expression of others. Defendant's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

130.     Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in Defendant's position knew or should have known.

131.     Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

132.     At all times relevant to this Complaint, Defendant was acting under color of state law.

133.     Defendant's actions caused, directly or proximately, Plaintiff to suffer damages.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Malicious Prosecution**

134.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

135.     Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as a law enforcement officer for the Fort Worth Police Department at all times relevant to the allegations in this Complaint.

136.     Defendant arrested Plaintiff and caused charges to be brought against Plaintiff.

137.       In support of this arrest and charges, Defendant made many false statements in his narrative report in order to support the charges that he brought against Plaintiff.

138.       Defendant knew these statements to be false, but made them in order to support the bringing of criminal charges he knew lacked factual support.

139.       Defendant lacked probable cause and knew that he lacked probable cause.

140.       Defendant brought these charges to punish Mr. Mata for his protected First Amendment activity in recording police officers.

141.       Plaintiff was forced to defend himself in Court.

142.       The case was dismissed in Plaintiff's favor.

143.       At all times, Defendant was acting under color of state law.

144.       Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their positions knew or should have known.

145.       Defendant's actions caused, directly and proximately, Plaintiff to suffer damages.

## SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Unlawful Search

146.       Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

147.       Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as a law enforcement officer for the Fort Worth Police Department at all times relevant to the allegations in this Complaint.

148.       Defendant placed Mr. Mata under arrest by holding him at gunpoint, directing officers to place him in handcuffs, placing him in the back of his patrol car, and taking him to the jail.

149.    No probable cause supported this arrest.

150.    Defendant conducted a search of Mr. Mata and seized his camera without a warrant and because the arrest was not supported by probable cause, the search was not incident to a lawful arrest.

151.    At all times, Defendant was acting under color of state law.

152.    Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their positions knew or should have known.

153.    Defendant's actions caused, directly and proximately, Plaintiff to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award him all relief allowed by law, including but not limited to the following:

A. All appropriate relief at law and equity;

B. Economic losses on all claims as allowed by law;

C. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

D. Punitive damages;

E. Attorneys' fees and the costs, including expert witness fees, on all claims allowed by law;

F. Pre-and post-judgment interest at the lawful rate; and

G. Any other appropriate relief at law and equity that this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 7th day of April 2026.

/s/ Mark J. Streiff
Mark J. Streiff
State Bar No. 24117510
James T. Chiles
State Bar No. 24115062
Pantheon Legal Group PLLC
1020 Macon Street, Suite 5
Fort Worth, Texas 76102
Tel: (817) 381-2216
Fax: (817) 663-2216
mark.streiff@pantheon-legal.com

Edward Milo Schwab, #47897
Ascend Counsel, LLC
1 Broadway, Suite B210
Denver, CO 80203
(303) 888-4407
milo@ascendcounsel.co
*Pending Pro Hac Admission*

ATTORNEYS FOR PLAINTIFF

22